UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BAY MCNEIL,

           Plaintiff,

    v.

RASHEED KARIM, et al.,

           Defendants.

Case No. 16-cv-00418-JD

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 27, 35

Bay McNeil is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that the sole defendant in this case was deliberately indifferent to his serious medical needs by prescribing prednisolone eye drops after cataract surgery. Plaintiff contends that the eye drops caused blood clots and other harms. Defendant has filed a motion for summary judgment citing administrative exhaustion. Plaintiff filed an opposition. The motion is granted.

**BACKGROUND**

**Medical Care**

The following facts are undisputed:

Defendant Karim Rasheed is an ophthalmologist certified by the American Board of Ophthalmology. Motion for Summary Judgment ("MSJ") at 3. In 2010 plaintiff was incarcerated at Correctional Training Facility. Compl. at 2; MSJ at CCHCS-0009. In 2010 defendant recommended corneal transplant surgery for plaintiff's bilateral cataracts. Compl. ¶¶ 1-5; MSJ at CCHCS-0021. As part of the procedure defendant first removed the cataract in plaintiff's left eye. Compl. ¶ 4. After 30 days of healing, plaintiff returned for the corneal transplant surgery for plaintiff's left eye. *Id*. ¶ 5. During the surgery plaintiff had a panic attack and the operation could not be completed. *Id*. ¶ 6. Defendant could not complete the surgery until the left eye healed from

1 the aborted attempt. *Id*. ¶ 7. Defendant prescribed eye drops to aid in the healing of the eye. *Id*. ¶

2 8.

3 Defendant completed the surgery for the left eye on July 22, 2010. *Id*. ¶ 10. Plaintiff

4 decided to wait for the surgery for the right eye until he knew whether the left eye surgery was

5 successful. *Id.* ¶ 12. Defendants prescribed prednisolone eye drops for plaintiff's left eye. *Id*. ¶

6 11; MSJ at CCHCS-0017 to 0019. Plaintiff used the eye drops through 2014. Compl. ¶ 14.

7 In 2014 plaintiff was incarcerated at Centinela State Prison. On January 6, 2014, plaintiff

8 became sick from food poisoning. *Id*. ¶ 15. Medical staff noticed that plaintiff had decreased

9 circulation and discoloration in his right foot. *Id*. Due to plaintiff's diabetes and history of

10 smoking he was taken to the hospital, MSJ at CCHCS-0025, where it was discovered that plaintiff

11 had a clot in his right femoral artery. *Id*. at CCHCS-0023. After being discharged from the

12 hospital, plaintiff was seen by a doctor at a Centinela State Prison on January 17, 2014. *Id*. at

13 CCHCS-0021. Plaintiff stated he was doing fine. *Id*. Plaintiff argues in his complaint that the

14 prednisolone eye drops caused the blood clot in his leg and other eye problems. Compl. at ¶¶ 16,

15 18.

16 **Inmate Appeal**

17 On April 24, 2014, while at Centinela State Prison, plaintiff filed an inmate appeal, CEN

18 HC 14026861, stating that he intended to file a medical malpractice claim against defendant. MSJ

19 at CCHCS-0005. Plaintiff attached some medical documents including the surgical pathology

20 report. *Id*. at CCHCS-0021 to 0025. The appeal was processed at the second level of review. *Id*.

21 at CCHCS-0001 to 0002.

22 The inmate appeal was rejected on April 29, 2014. *Id*. at CCHCS-0009. The rejection

23 noted that the allegations were against defendant and a different prison, Soledad State Prison

24 (a.k.a., Correctional Training Facility), where the events occurred, not Centinela. *Id*. The denial

25 letter stated, "Centinela does not have jurisdiction over another institution or their medical staff . .

26 . . You are advised to forward your complaint to the Health Care Appeals Coordinator at Soledad

27 State Prison." *Id*. The denial letter also informed plaintiff that "appeals are required to be

28 submitted within 30 calendar days of the event that led to the filing of the appeal." *Id*. The letter

further advised plaintiff, "you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes, 30 calendar days, as specified in CCR 3084.6(a) and CCR 3084.8(b)." *Id.*

On May 9, 2014, the already rejected appeal was also cancelled at the second level based on untimeliness. *Id.* at CCHCS-0005, 0011. The cancellation notice stated, "To appeal this cancellation, you will need to demonstrate that you first had knowledge that the medication caused blood clots no more than thirty days prior to having submitted this appeal." *Id.* at CCHCS-0011. The notice also described the procedure to appeal the cancellation, stating, "Cancellation Note: Pursuant to CCR 3084.6(e), once an appeal has been cancelled, the appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. When an appeal is cancelled, your administrative remedies have not been exhausted pursuant to Title 15 CCR Section 3084.1(b)." *Id.*

On May 16, 2014, plaintiff submitted a response to the cancellation notice. *Id.* at CCHCS-0015. Plaintiff submitted two pages of medical information concerning prednisolone eye drops that he received on April 24, 2014, from the medical department. *Id.* On May 28, 2014, plaintiff's submission was cancelled due to noncompliance with appeal procedures. *Id.* at CCHCS-0013. The May 28 cancellation notice stated that plaintiff must challenge the cancellation in a separate appeal as stated in the prior notices. *Id.*

On June 18, 2014, plaintiff requested a review of inmate appeal CEN HC 14026861 at the Director's Level. *Id.* at CCHCS-0006. On August 12, 2014 the Director cancelled and returned the appeal for noncompliance with appeal procedures. *Id.* at CCHCS-0003 to 0004. The letter stated, "Cancelled at Lower Level: Your appeal was cancelled by the institution at a lower level of review." *Id.* at CCHCS-0003. The letter described the procedure to challenge the cancelled appeal and noted, "When an appeal is cancelled, your administrative remedies have not been exhausted pursuant to Title 15 CCR Section 3084.1(b)." *Id.* at CCHCS-0003 to 0004.

**LEGAL STANDARD**

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id*. at 1168. The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. *Id*. at 1172. If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. The ultimate burden of proof remains with the defendant, however. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*. at 1166. But if material facts are disputed, summary judgment should be denied, and the district judge, rather than a jury, should determine the facts in a preliminary proceeding. *Id*.

The California Department of Corrections and Rehabilitation ("CDCR") provides any inmate under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). To initiate an appeal, also referred to as a grievance, the inmate or parolee must submit a CDCR Form 602 describing the issue to be appealed to the appeals coordinator's office at the institution for receipt and processing. *Id*. § 3084.2(a)-(c). The appeal must name "all staff member(s) involved" and "describe their involvement in the issue." *Id*. § 3084.2(a)(3). The CDCR appeal process consists of three formal levels of appeals: (1) first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with the CDCR director or designee. Id. §§ 3084.7, 3084.8. A prisoner exhausts the appeal process when he completes the

third level of review. *Id*. § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Woodford*, 548 U.S. at 93. Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id*. at 90.

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use [because while] some mechanism exists to provide relief . . . no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60.

**DISCUSSION**

Defendant contends that plaintiff failed to properly exhaust his administrative remedies. His appeal was rejected and cancelled at the second and third levels. The appeal was also deemed untimely and filed at the wrong institution. The rejection and cancellation letters from the different appeal levels discussed the proper manner to appeal the decision and exhaust the appeal. Defendant argues that plaintiff failed to properly comply with the procedural rules.

The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Woodford*, 548 U.S. at 93. This requirement cannot be satisfied "by

5

filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. A prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *See id*. at 87; *see also Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that, to exhaust remedies, a prisoner must file appeals in the place, and at the time, the prison's administrative rules require).

Defendant has met his burden in showing that there was an available administrative remedy that the plaintiff failed to exhaust. Plaintiff has partially met his burden in refuting this. It is undisputed that the incident in this case-defendant prescribing prednisone eye drops-occurred in 2010 at Correctional Training Facility. It is also undisputed that plaintiff did not file an inmate appeal about this incident until 2014 in Centinela State Prison.

Plaintiff essentially argues that the administrative remedy was unavailable to him based on the responses from Centinela State Prison. Defendant argues that plaintiff failed to follow the proper procedures. With respect to the timeliness of the appeal, plaintiff has shown that he was not aware of the medical problems until a few years later, when he went to the hospital in January 2014, and it took several months for him to obtain the medical information and records concerning the prednisolone drops. Plaintiff followed the instructions for filing an appeal and demonstrated that he submitted the appeal within 30 days of discovering the information, as required by California regulations. However, plaintiff failed to follow the proper procedures and instructions and file the appeal at the appropriate prison.

Plaintiff filed the first appeal on April 24, 2014, at Centinela State Prison. Five days later on April 29, 2014, the appeal was rejected, and the rejection letter explicitly noted that plaintiff needed to submit his appeal to Correctional Training Facility, where the incident occurred, because Centinela State Prison did not have jurisdiction over a different prison and its staff. The rejection letter also noted that at that appeal level, plaintiff could not appeal the rejection; rather, he needed to correctly resubmit the appeal, i.e., submit it to the correct prison. Plaintiff failed to

follow these instructions. Defendant also noted in the motion for summary judgment that plaintiff submitted his appeal to the wrong location, yet plaintiff has not addressed this argument in his opposition.

This is not a situation where plaintiff was transferred to a new facility in the midst of filing inmate appeals and either one of the facilities was obstructing his appeals or it was unclear where to submit the filings. No facility obstructed his appeal and Centinela State Prison made it clear that the appeal needed to be submitted at Correctional Training Facility. It was reasonable for Centinela State Prison to determine that the appeal should be filed at the prison where the incident occurred and where staff named in the appeal was located, especially because the incident was four years old. Plaintiff was notified within a few days of filing his appeal that he needed to submit it to Correctional Training Facility, which had jurisdiction for the claim, yet plaintiff chose not to comply with this procedural instruction. Plaintiff continued to resubmit appeals to Centinela State Prison rather than follow the instructions to submit his appeal to Correctional Training Facility. Even viewing the evidence in a light most favorable to plaintiff, he failed to exhaust his administrative remedies and defendant is entitled to summary judgment.

**CONCLUSION**

1. Defendant's motion for summary judgment (Docket No. 27) is **GRANTED**.

2. Plaintiff's motion to dismiss the unserved defendants (Docket No. 35) is **GRANTED** and Dr. F. Von Lintig and Dr. M. Fraze are **DISMISSED** from this action.

3. Plaintiff erroneously identified the defendant in this case reversing the name. The Clerk shall **CHANGE** defendants name on the docket to Karim Rasheed

4. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: January 16, 2018

_____
JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BAY MCNEIL,

            Plaintiff,

    v.

RASHEED KARIM, et al.,

           Defendants.

Case No. 16-cv-00418-JD

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

      That on January 16, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Bay  McNeil ID: #H38906
California Medical Facility
P.O. Box 2500
J1 Dorm 5 134u
Vacaville, CA 95696

Dated: January 16, 2018

                        Susan Y. Soong
                        Clerk, United States District Court

                        By:
                        LISA R. CLARK, Deputy Clerk to the
                        Honorable JAMES DONATO